IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACQUES S. HAWKINS, #87864-509, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 23-cv-02008-SMY |
| ) | |
| PHILLIPS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jacques Hawkins, an inmate currently incarcerated at the FCI-Greenville, Illinois, He filed the instant lawsuit against Defendant Phillips, claiming she has committed federal torts against him (Doc. 1).[1] He seeks injunctive relief in the form of a transfer to a different prison location.

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff did not use a standard complaint form. Instead, he presents his claims in the form of a letter to Defendant Phillips with an Affidavit of Facts (Doc. 1, pp. 1-5) and an Affidavit of Facts directed to the Chief District Judge in the Eastern District of Missouri (Doc. 1, pp. 6-7). Plaintiff later submitted two more Affidavits of Facts (Docs. 2, 6). Plaintiff makes the following

---

[1] Plaintiff filed this case in the Eastern District of Missouri, which transferred the action to this District Court on June 13, 2023 (Docs. 5, 7).

1

allegations in these documents, which for the sake of expediency, the Court construes collectively as his Complaint:

Plaintiff arrived at FCI-Greenville on March 29, 2023 (Doc. 1, p. 4).  His religious diet requests were ignored for at least a month (Doc. 1, p. 4; Doc. 6, p. 3).

Caseworker Phillips called Plaintiff into her office on April 17, 2023 regarding his detainers/warrants and halfway house consideration (Doc. 1, p. 6).  Phillips allowed Plaintiff to read his file, which was the first time he saw the material since he was sentenced.  Plaintiff returned to his housing area, where 4-6 inmates surrounded him and accused him of having a "5K1," indicating he was a snitch.  These inmates, whom Plaintiff describes as "'St. Louis Car' political inmates," forced Plaintiff to go back to Phillips' office with them so they could read his paperwork.  Plaintiff told Phillips that the inmates were forcing him to have somebody re-read his documents and they were willing to jump/attack him to make him check in to protective custody.  Phillips asked Plaintiff if he wanted to "phone-a-friend."  Plaintiff asked her what that was supposed to mean and wasn't it illegal for inmates to read other inmates' paperwork.  The inmate(s) re-read Plaintiff's paperwork 2-3 times with Plaintiff present.

The next day, Plaintiff spoke again with Phillips and informed her that his life was being threatened.  She stated, "Didn't you get cleared and weren't you OK/good yesterday by a leader of St. Louis Car political member(s)?" (Doc. 1, p. 7).  After lunch that day, Plaintiff was ordered by 4-6 inmates to leave the housing unit.  They entered Plaintiff's cell, took his property, and stole his commissary items.  Plaintiff left the unit and told correctional officers what was going on.  The officers stopped the inmates and asked them to return Plaintiff's property.  Shortly thereafter, Plaintiff was sent to the Special Housing Unit ("SHU"), where he spent at least 15 days.  He sent kites to Phillips asking her to put him in for a transfer due to the risk to his life from the inmates

who threatened him, but she ignored him and refused to speak to him when she made her rounds in the SHU (Doc. 1, pp. 1-2). Plaintiff believes Phillips is trying to accuse him of some violation in order to cover up her wrongdoing in allowing the other inmates to view his file (Doc. 1, p. 3).

Plaintiff filed an Administrative Remedy against Phillips for allowing the inmates to read his paperwork (Doc. 2, p. 4). Lt. Burggraf[2] coerced Plaintiff to withdraw the complaint and lied to him about the possibility of getting a transfer (Doc. 2, pp. 1-3). Plaintiff was "forced" into the SHU a second time.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

>   Count 1:    Eighth Amendment deliberate indifference/failure to protect claim against Phillips for placing Plaintiff in danger by allowing other inmates to view his file, and failing to act after Plaintiff reported the inmates' threats to Phillips.
>
>   Count 2:    Eighth Amendment and/or Fourteenth Amendment claim against Phillips for allowing Plaintiff to be placed in the punitive environment of the SHU for no reason.
>
>   Count 3:    First Amendment claim against unknown officers for failing to respond to Plaintiff's requests for a religious diet.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[3]

## Discussion

### Count 1

As an initial matter, Plaintiff's Complaint supports potential constitutional claims against

---

[2] Burggraf is not named as a Defendant herein.
[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

persons acting under the color of federal authority, not federal tort claims. *See* 28 U.S.C. § 2671 *et seq*. Accordingly, the Complaint will be analyzed consistent with *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (internal citations omitted). To state a claim for violation of this duty, a plaintiff must sufficiently plead that he complained to prison officials about a specific, impending, and substantial threat to his safety. *See Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006); *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). Here, Plaintiff alleges that he complained to Phillips about the threats he received, that Phillips observed the interaction with the inmates who brought Plaintiff to her office to read his file, and that Phillips took no action to protect him. These allegations are sufficient to state a viable Eighth Amendment claim against Phillips. *See Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

### Count 2

"[I]nmates have no liberty interest in avoiding transfer[s] to discretionary segregation— that is, segregation imposed for administrative, protective, or investigative purposes." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). By his own description, Plaintiff was not assigned to the SHU as punishment for a disciplinary infraction, but for protection. Therefore, he cannot maintain a constitutional claim for his placement in the SHU. Accordingly, Count 2 will be dismissed for failure to state a claim upon which relief may be granted.

### Count 3

Observance of religiously mandated dietary restrictions is a form of religious practice protected by the First Amendment. *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990) (citing cases); *see also Vinning-El v. Evans*, No. 10-1681, at 4 (7th Cir. Sept. 16, 2011). Plaintiff may

have a cognizable claim based on Greenville officials' alleged failure to accommodate his requests for a diet consistent with his religious beliefs. However, Plaintiff does not claim that Defendant Phillips had any role in denying his religious diet. Nor does he identify any other officials who received his requests and failed to provide the religious diet he sought. Because a plaintiff is required to associate specific defendants with specific claims so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint, Count 3 will be dismissed without prejudice. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).

Plaintiff may amend his Complaint if he wishes to pursue this claim. However, because the religious diet claim appears to be unrelated to the claim against Phillips in Count 1, it may need to proceed in a separate action, which will result in Plaintiff being assessed a separate filing fee. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

The Clerk will be directed to send Plaintiff a blank civil rights complaint form, which may be used to file a new case, or to file an amended complaint in this action. If Plaintiff chooses to file an amended complaint in *this* case, he should label the form "First Amended Complaint" and use the case number for this action (No. 23-cv-2008-SMY).

### Injunctive Relief

Because the Complaint includes a request for injunctive relief, the Warden of FCI-Greenville, in his/her official capacity, will be added to the docket for purposes of the request for injunctive relief. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as s/he would be responsible for ensuring that any injunctive relief would be carried out).

## Pending Motions

### Motion for Appointment of Counsel

Plaintiff's Motions for Appointment of Counsel (Docs. 4, 18) are **DENIED**. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court considers whether the *pro se* party has made reasonable efforts to secure counsel on his own and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Here, Plaintiff has not identified any efforts made to obtain counsel on his own. Moreover, at this early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel, so recruitment of counsel would be premature. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged.").

Should Plaintiff encounter difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel. If he renews his request, he should submit at least 3 rejection letters from attorneys to show that he has made reasonable efforts to obtain counsel on his own.

### Motion for Compassionate Release

Plaintiff submitted an Inmate Request for Compassionate Release Consideration, filed on the docket as a Motion for Compassionate Release (Doc. 17). The document is a form from FCI-Greenville and is directed to Warden Lilliard for consideration. This Court is not empowered to consider a motion for compassionate release in the context of a civil rights case. Instead, the compassionate release request must be submitted to the warden in the initial instance. *See* 18 U.S.C. § 3582 (c)(1)(A). Accordingly, the Motion for Compassionate Release (Doc. 17) is

**DENIED** without prejudice.

### Disposition

The Complaint states a colorable claim in Count 1 against Phillips. Counts 2 and 3 are **DISMISSED** without prejudice. The Clerk of Court is **DIRECTED** to **ADD** the Warden of FCI-Greenville, in his or her official capacity, to the docket for purposes of Plaintiff's claim for injunctive relief. The Clerk is further **DIRECTED** to mail Plaintiff a civil rights complaint form.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Phillips and the Warden of FCI-Greenville (official capacity only); the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants Phillips and the Warden of FCI-Greenville pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint (Docs. 1, 2, and 6), and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint (Docs. 1, 2, and 6), and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes

the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 11. 2024**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.